IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| YURENIA GENCHI PALMA,<br><br>Petitioner,<br><br>vs.<br><br>DONALD J. TRUMP, in their official capacity as President of the United States; KRISTI NOEM, in their official capacity as Secretary of the United States Department of Homeland Security; MARCO RUBIO, in their official capacity as Secretary of State of the United States; PAMELA BONDI, in their official capacity as Attorney General of the United States; TODD M. LYONS, in their official capacity as Acting Director of the United States Immigration and Customs Enforcement; PETER BERG, in their official capacity as St. Paul Field Office Director for Enforcement and Removal Operations, United States Immigration and Customs Enforcement; and JEROME J. KRAMER, in their official capacity as Lincoln County Sheriff, Official of Lincoln County Detention Center;<br><br>Respondents. | 4:25CV3176<br><br>**MEMORANDUM AND ORDER** |

This matter comes before the Court on Yurenia Genchi Palma's Petition for Writ of Habeas Corpus, Filing No. 1. The Court finds the government is unlawfully detaining Petitioner in violation of her Due Process rights by invoking a uniletal automatic stay of the bond a duly appointed Immigration Judge determined was appropriate. Accordingly, it orders Respondents to immediately release Petitioner.

**I.     BACKGROUND**

1

Petitioner was arrested by ICE on June 10, 2025, at a raid at the Glenn Valley Foods plant in Omaha.  *See* Filing No. 1.  Upon her arrest, DHS determined she should be detained.  DHS served Petitioner with a notice to appear that charged her as "an alien present in the United States who has not been admitted or paroled" pursuant to INA § 212(a)(6)(a)(i), codified at 8 U.S.C. § 1226(a)(6)(a)(i).  The notice to appear also stated, "You may request a review of this custody determination by an immigration judge," which Petitioner did.  Filing No. 11-1.

On July 15, 2025, the Immigration Judge ("IJ) held a hearing on Petitioner's request for bond redetermination.  Filing No. 1-4.  DHS argued that the IJ lacked jurisdiction because Petitioner should be subject to mandatory detention as an arriving alien under INA § 235(b)(2)(A), codified at 8 U.S.C. § 1225(b)(2)(A).  Filing No. 1-4.  The IJ rejected this argument, finding Petitioner had been arrested pursuant to INA § 236, codified at 8 U.S.C. § 1226, as an alien already present in the country, not a newly arriving alien.  Filing No. 1-4.  Having determined she had jurisdiction, the IJ found Petitioner was not a danger to the community and ordered her to post a bond of $7,000 to alleviate any flight risk concerns.  Filing No. 1-9 at 4.

DHS immediately appealed the IJ's order granting Petitioner release on bond.  In so doing, it filed a Form EOIR-43, Notice of ICE Intent to Appeal Custody which stated "automatically stays the Immigration Judge's custody redetermination decision. See 8 C.F.R. § 1003.19(i)(2)."  Filing No. 11-2.  That regulation provides:

> ***Automatic stay in certain cases.*** In any case in which DHS has determined that an alien should not be released or has set a bond of $10,000 or more, any order of the immigration judge authorizing release (on bond or otherwise) shall be stayed upon DHS's filing of a notice of intent to appeal the custody redetermination (Form EOIR-43) with the immigration court within one business day of the order, and, except as otherwise

2

> provided in 8 CFR 1003.6(c), shall remain in abeyance pending decision of the appeal by the Board. The decision whether or not to file Form EOIR-43 is subject to the discretion of the Secretary.

8 C.F.R § 1003.19(i)(2). The automatic stay lapses after 90 days, absent a BIA decision. 8 C.F.R. § 1003.6(c)(4). However, the government can extend the detention by seeking a discretionary stay from the BIA at the expiration of the stay which automatically extends the stay for an additional 30 days while the BIA decides the request for discretionary stay. 8 C.F.R. § 1003.6(c)(5). If the Board authorizes an alien's release (on bond or otherwise), denies a motion for discretionary stay, or fails to act on such a motion before the automatic stay period expires, the alien's release shall be automatically stayed for five business days. 8 C.F.R. § 1003.6(d). During that period, DHS can choose to refer the bond decision to the Attorney General, which extends the automatic stay for another 15 business days. 8 C.F.R. § 1003.6(d). The Attorney General can then extend the stay for the pendency of the custody proceedings. 8 C.F.R. § 1003.6(d).

Due to DHS's invocation of this automatic stay, Petitioner has remained detained. She filed the present action under 28 U.S.C. § 2241 seeking a writ of habeas corpus. The Court held a hearing on the matter on September 11, 2025.

II.     STANDARD OF REVIEW

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2). This includes immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). The petitioner seeking habeas relief must demonstrate she is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3); *Walker v. Johnston*, 312 U.S. 275, 286 (1941).

3

### III.  ANALYSIS

Petitioner argues that her detention pursuant to the automatic stay provision violates her due process rights and is ultra vires.

**A. Petitioner is Not Being Detained Pursuant to 8 U.S.C. § 1225(b)(2)**

The government's argument in opposition to Petitioner's petition for writ of habeas corpus is that she is subject to mandatory detention as an arriving alien under 8 U.S.C. § 1225. This was the same argument it advanced at her bond redetermination hearing and which the IJ rejected. This is also the issue the government advances on its appeal of the bond decision to the BIA. The government also notes that the BIA recently decided a similar issue in *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA Sept. 5, 2025), in which it concluded ICE could treat undocumented immigrants already present in the United States as arriving aliens subject to mandatory detention under 8 U.S.C. § 1225.

Under § 1225(b)(2), "in the case of an alien who is an *applicant for admission*, if the examining immigration officer determines that an alien *seeking admission* is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained." 8 U.S.C. § 1225(b)(2) (emphasis added). By contrast, an alien arrested on a warrant issued by the Attorney General "may" be detained but is also eligible for release on bond. 8 U.S.C § 1226(a). Courts have repeatedly held that § 1225 applies to arriving aliens, while § 1226 governs detention of "aliens already in the country." *Jennings v. Rodriguez*, 583 U.S. 281, 281 (2018). The BIA's decision in *Hurtado* represents a stark departure from that approach.

The IJ concluded Petitioner was not an arriving alien under § 1225. She noted that while DHS may prevail on that argument before a higher Court, she was required to

4

follow precedent which granted her jurisdiction to redetermine the Petitioner's bond under 8 U.S.C. § 1226(a)(6)(a)). The Court notes that precedent is evolving and with the *Hurtado* decision, the IJ may very well have reached another conclusion or may very well be required to do so on remand. For now, however, Petitioner's case remains on appeal before the BIA to decide the applicability of *Hurtado* to her case and Petitioner remains detained under the automatic appeal stay.

The Court notes that the government itself charged Petitioner as an "alien present in the United States who has not been admitted or paroled" rather than an "arriving alien." Filing No. 11-1 at 1, 4 (DHS notice to appear stating Petitioner is charged under INA 212(a)(6)(a), codified at 8 U.S.C. § 1226(a)(6)(a)). The notice of custody determination advised the Petitioner she could request an immigration judge to review ICE's custody determination, further supporting that ICE itself did not believe she was subject to mandatory detention.

The Court need not determine the validity of the government's argument that Petitioner should be mandatorily detained under § 1225 nor the applicability of the BIA's decision in *Hurtado*, 29 I&N Dec. 216. At the present time, Petitioner is detained solely pursuant to the automatic-stay provision of 8 C.F.R. § 1003.19(i)(2), not the mandatory-detention provision of § 1225. The government's argument about whether it can apply § 1225 to Petitioner as an alien already present in the United States is the issue currently being briefed before the BIA in Petitioner's case. For the time being, the Court is concerned only with the lawfulness of the automatic stay, the present basis for Petitioner's detention. Accordingly, the Court turns to Petitioner's arguments for why her detention is

unlawful: it violates her due process rights, and the regulation pursuant to which she is held is ultra vires of the delegating statute.

### B. Procedural Due Process

Petitioner first argues her detention violates her due-process rights. The Court agrees her detention violates both her procedural and substantive due-process rights.

To determine whether a civil detention violates a detainee's due process rights, courts apply the three-part test set forth in Mathews v. Eldridge, 424 U.S. 319, (1976). Pursuant to *Mathews*, courts weigh the following three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews, 424 U.S. at 335.

First, Petitioner has a significant interest at stake. Being free from physical detention by one's own government "is the most elemental of liberty interests." Hamdi v. Rumsfeld, 542 U.S. 507, 529 (2004). Petitioner is being held at a county jail in the same conditions as criminal inmates and is far from her family. *See* Velasco Lopez v. Decker, 978 F.3d 842, 851 (2d Cir. 2020) (finding, in assessing the first *Mathews* factor, that, "The deprivation he experienced while incarcerated was, on any calculus, substantial. He was locked up in jail. He could not maintain employment or see his family or friends or others outside normal visiting hours.").

Second, there is a large risk of erroneous deprivation of Petitioner's liberty interest through the procedures used in this case, and there are available alternative procedures

which would ameliorate those risks. The risk of deprivation is high because the only individuals subject to the automatic stay are those who, by definition, prevailed at their bond hearing. In this case, the IJ found Petitioner was not a threat to public safety and determined the $7,000 bond would mitigate any risk of flight. The government did not contest the IJ's findings on flight risk and danger to the community. Nevertheless, despite a neutral decision-maker finding a bond was warranted, the automatic stay provision allowed DHS, the party who lost its bond argument, to unliterally deprive Petitioner of her liberty. Other courts considering the automatic stay provision have found this problematic as well. See *Zavala v. Ridge*, 310 F. Supp. 2d 1071, 1078 (N.D. Cal. 2004) ("The [automatic stay] procedure additionally creates a potential for error because it conflates the functions of adjudicator and prosecutor.").

Additionally, the stay provision does not require DHS to consider or demonstrate any individualized facts or show a likelihood of success on the merits. See 8 C.F.R § 1003.19(i)(2) (stating the stay is automatic and the bond "shall be stayed" upon filing of the form EOIR-43). "[A] stay of an order directing the release of a detained individual is an 'especially' extraordinary step, because '[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception.'" *Gunaydin v. Trump*, No. 25-CV-01151 (JMB/DLM), 2025 WL 1459154, at *9 (D. Minn. May 21, 2025) (alteration in original) (quoting *United States v. Salerno*, 481 U.S. 739, 755 (1987)). By contrast, the automatic stay regulation "turns these well-established procedural principles on their heads and carries a significant risk of erroneous deprivation." *Id.*

As to available alternatives, the regulations already provide one: DHS may request a discretionary emergency stay from the BIA. See 8 C.F.R. § 1003.10(i)(1) (granting BIA

7

discretionary stay authority).  This procedure mitigates the concern about DHS usurping the neutral adjudicatory role and provides additional safeguards that the automatic stay provision lacks.

Lastly, as to the third *Mathews* factor, there is not a significant governmental interest at stake in Petitioner's detention pursuant to the automatic stay provision.  The government does not set forth a potential interest, choosing to focus on its supposed authority to categorize her as an arriving alien.  Even if the Court were to assume the government had asserted an interest in, for example, ensuring Petitioner's availability for her immigration case, this interest has already been secured by the IJ's finding that Petitioner is neither a danger nor a flight risk.  Indeed, the government did not contest the IJ's determinations in this respect.  Thus, the government's interest is both vague and minimal especially in contrast to the significant liberty interest at stake for the Petitioner.

In conclusion, all three *Mathews* factors favor Petitioner's position.  The automatic stay regulation at 8 C.F.R § 1003.19(i)(2) violates Petitioner's procedural due process rights under the Fifth Amendment.

### C. Substantive Due Process

The Court also finds Petitioner has been deprived of her substantive Due Process rights.

The Fifth Amendment guarantees that no person shall be deprived of liberty without due process of law.  U.S. Const. Amend. V.  "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects."  *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). "Government detention violates the Due Process Clause unless it is ordered in a criminal

proceeding with adequate procedural safeguards, or in certain special and non-punitive circumstances 'where a special justification, . . . outweighs the individual's constitutionally protected interest in avoiding physical restraint.'" *Zavala v. Ridge*, 310 F. Supp. 2d 1071, 1076 (N.D. Cal. 2004) (quoting *Kansas v. Hendricks*, 521 U.S. 346, 356 (1997)).

Respondents have not attempted to show any "special justification" or compelling governmental interest which would outweigh Petitioner's constitutional liberty. To the extent the government may contend that continued detention is necessary to secure Petitioner's presence for her immigration proceedings, such a concern is not well-placed. As explained above, the IJ determined Petitioner was not a danger or flight risk, and imposed a bond and other conditions, including her continued appearance at court dates, as conditions of her bond.

Additionally, as explained above, the automatic stay provision applies only in situations like here where an IJ has already determined an individual should be released on bond. The governmental interest in the continued detention of these least-dangerous individuals, in contravention of the order of a neutral fact-finder, does not outweigh the liberty interest at stake. Accordingly, the Court agrees Respondents' invocation of the automatic stay provision to detain Petitioner has violated her substantive due process rights.

### D. Ultra Vires

Petitioner lastly argues that the automatic stay regulation is ultra vires because it exceeds the statutory authority granted to the Attorney General. Respondents did not address this issue in depth in briefing to the Court.

9

"Agency actions beyond delegated authority are 'ultra vires,' and courts must invalidate them." U.*S. ex rel. O'Keefe v. McDonnell Douglas Corp.*, 132 F.3d 1252, 1257 (8th Cir. 1998); *see also Romero v. INS*, 39 F.3d 977, 980 (9th Cir. 1994) (holding that an immigration regulation that is inconsistent with the statutory scheme is invalid).

The statutory section under which Petitioner is charged permits the Attorney General to detain or release aliens on bond. 8 U.S.C. § 1226(a). Congress has permitted the Attorney General to delegate detention determinations to "any other officer, employee, or agency of the Department of Justice." 28 U.S.C. § 510. IJs are administrative law judges within the DOJ and are thus properly delegated bond-determination authority. *See* 8 U.S.C. § 1101(b)(4). By contrast, DHS, the party that invoked the automatic stay provision, is not within the Department of Justice, but is a separate executive department. *See* 6 U.S.C. § 111.

By permitting DHS to unliterally extend the detention of an individual, in contravention of the findings of an agent (the IJ) properly delegated the authority to make such a determination, 8 C.F.R § 1003.19(i)(2) exceeds the statutory authority Congress gave to the Attorney General. "Because this back-ended approach effectively transforms a discretionary decision by the immigration judge to a mandatory detention imposed by [DHS], it flouts the express intent of Congress and is ultra vires to the statute." *Zavala v. Ridge*, 310 F. Supp. 2d 1071, 1079 (N.D. Cal. 2004). Accordingly, the challenged regulation is invalid and Petitioner's detention on that basis is unlawful.

### IV.    CONCLUSION

For the foregoing reasons, the Court determines Petitioner is being held unlawfully because her detention pursuant to the automatic stay provision at 8 C.F.R § 1003.19(i)(2)

violates her due process rights and is ultra vires of the authority delegated in the Immigration and Nationality Act. Accordingly,

IT IS ORDERED:

1. Yurenia Genchi Palma's Petition for Writ of Habeas Corpus, Filing No. 1, is granted.

2. Respondents shall immediately return Petitioner to ICE custody and immediately release Petitioner upon her re-posting of the ordered bond, with no additional conditions beyond those imposed by the Immigration Judge at the bond redetermination hearing.

3. The parties are ordered to file a joint status report by 5:00 P.M. on Friday, September 12, 2025, confirming Petitioner has been released.

4. The Court will enter a separate judgment.

Dated this 11th day of September, 2025.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge